# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

ROBERT J. ACKERMAN,

        Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

No. C14-3040-MWB

**REPORT AND RECOMMENDATION**

---

Plaintiff Robert J. Ackerman seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying his application for Social Security Disability benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 et seq. (Act). Ackerman contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant time period. For the reasons that follow, I recommend that the Commissioner's decision be affirmed.

## I.     BACKGROUND

Ackerman was born in 1971. AR 43. He completed high school, received a bachelor's degree in social work and has no past relevant work. AR 18-19, 44-45. Ackerman protectively filed his applications for DIB and SSI on August 19, 2010, alleging a disability onset date of April 1, 2006. AR 14. His applications were denied initially and on reconsideration. AR 75, 81. Ackerman then requested a hearing before an Administrative Law Judge (ALJ). AR 14. ALJ Thomas M. Donahue conducted the

hearing on July 12, 2012. AR 14, 40. Ackerman and a vocational expert (VE) testified. AR 41-67.

On September 10, 2012, the ALJ issued a decision denying Ackerman's claim. AR 14-31. Ackerman sought review of this decision by the Appeals Council, which denied review on May 7, 2014. AR 1. The ALJ's decision thus became the final decision of the Commissioner. AR 1; *see also* 20 C.F.R. §§ 404.981, 416.1481.

Ackerman filed a complaint (Doc. No. 3) in this Court on July 3, 2014, seeking review of the ALJ's decision. This matter was referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition. The parties have briefed the issues and the matter is now fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. §§ 404.1566(c)(1)-(8), 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the

regulations. *Id.* §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. §§ 404.1572(a), 404.1572(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c), 416.921(a); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant cannot do his past relevant work then he is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based on all relevant medical and other evidence. *Id.* §§ 404.145(a)(3), 416.945(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education and work experience. *Id.* §§ 416.912(f), 416.920(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At step five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id.* §§

404.145(a)(3), 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps the ALJ has determined the claimant is disabled but there is medical evidence of substance use disorders, the ALJ must decide if that substance use is a contributing factor material to the determination of disability. 42 U.S.C. §§ 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. §§ 404.1535, 416.935.

## III. THE ALJ'S FINDINGS

The ALJ made the following findings:

(1)   The claimant met the insured status requirements of the Social Security Act through December 31, 2011.

(2)   The claimant has not engaged in substantial gainful activity since April 1, 2006, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

(3)   The claimant has the following severe impairments: depression; bipolar disorder; gastroesophageal reflux disease; bilateral hallux valgus (hammertoe); status-post gastric bypass surgery with small bowel resection (20 CFR 404.1520(c) and 416.920(c)).

(4)   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

(5)   After careful consideration of the entire record, the undersigned finds that, based on all of the impairments, including the substance use disorders, the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and

416.967(c) such that he could lift 50 pounds occasionally, 25 pounds frequently, sitting and standing two hours at a time for six of an eight-hour day, and walking one mile. There could be no climbing of ladders, ropes, or scaffolds, and no working at heights. He would need a low stress level job such as three, with ten being the most stressful and one being the least stressful. Due to drug and alcohol addiction, the claimant would miss three or more days of work per month.

(6)    The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

(7)    The claimant was born on February 3, 1971 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(8)    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

(9)    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

(11)    If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

(12)    If the claimant stopped the substance use, the claimant would not have an impairment or combination of

impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404 Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

(13)  If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) such that he could lift 50 pounds occasionally, 25 pounds frequently, sitting and standing two hours at a time for six of an eight-hour day, and walking one mile. There could be no climbing of ladders, ropes, or scaffolds, and no working at heights. He would need a low stress level job such as three, with ten being the most stressful and one being the least stressful.

(14)  As indicated above, the claimant does not have past relevant work (20 CFR 404.1565 and 416.965).

(15)  As indicated above, transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

(16)  If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

(17)  The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(g), 404.1535, 419.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

AR 17-30.

## IV.    THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to

draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.    DISCUSSION

Ackerman contends the ALJ's decision is not supported by substantial evidence because (a) the ALJ failed to give the proper weight to opinion evidence and did not give sufficient reasons for discounting that evidence, (b) the Appeals Council failed to properly evaluate additional opinion evidence and (c) the ALJ failed to support the RFC assessment with substantial medical evidence. I will address these arguments separately.

### A.    Opinion Evidence

Ackerman contends that the ALJ did not give appropriate weight to the opinions of Raja Akbar, M.D., a psychiatrist, and Scott Dickinson, LMHC, a therapist.

#### 1.    Applicable Standards

"In deciding whether a claimant is disabled, the ALJ considers medical opinions along with 'the rest of the relevant evidence' in the record." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting 20 C.F.R. § 404.1527(b)). "Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the] impairment(s),

including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and . . . physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Other relevant evidence includes medical records, observations of treating physicians, other sources' observations and the individual's own description of his limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). However, a conclusion from a medical source that the applicant cannot work or is "disabled" is not considered a medical opinion deserving of controlling weight. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). A claimant's ability or inability to work is an issue left solely to the Commissioner. *Id.*

Medical opinions can come from treating sources, examining sources or non-treating, non-examining sources. Medical opinions from treating sources should not ordinarily be disregarded, and should receive substantial weight. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). Treating sources are defined as medical sources who provide the claimant with treatment and evaluation and have an ongoing relationship with the claimant. 20 C.F.R. §§ 404.1502, 416.902. An ongoing relationship exists when the evidence shows the claimant has seen the medical source with a frequency "consistent with the accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical conditions." *Id.* "When the treating source has seen [the claimant] a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment" the opinion is given more weight than a non-treating source's opinion. 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i).

If the ALJ finds that the treating source's medical opinion as to the nature and severity of the claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] record, [the ALJ] will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, a treating source's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626 (8th Cir. 2007). If the ALJ discounts a treating source's medical

opinion, he should give good reasons for doing so. *Brown v. Astrue*, 611 F.3d 941, 951-52 (9th Cir. 2010).

Opinions from examining sources come from physicians who examined the claimant for purposes of forming a medical opinion, such as a one-time consultative examiner, but are not considered "treating sources." These opinions do not generally constitute substantial evidence, especially when contradicted by a treating physician's opinion. *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000). Exceptions occur when other assessments are supported by more or better medical evidence or the treating physician gives inconsistent opinions. *Id.*

Opinions from non-treating, non-examining sources do "not normally constitute substantial evidence on the record as a whole." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003). This does not mean such opinions should be disregarded. The ALJ may give them more weight than a treating source's medical opinion when they are also supported by "better or more thorough medical evidence." *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000). Unless a treating source's opinion is given controlling weight, the ALJ "must explain in the decision the weight given" to non-treating, non-examining sources' opinions. 20 C.F.R. § 404.1527(e)(2)(ii).

Ultimately, it is the ALJ's duty to assess all medical opinions and determine the weight given to these opinions. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'")(citing *Bentley v. Shalala*, 52 F.32 784, 785-87 (8th Cir. 1995)).

### 2. *Overview of Opinions*

#### a. *Dr. Akbar*

On November 11, 2010, Dr. Akbar prepared a report after conducting a psychiatric evaluation of Ackerman. AR 582. Dr. Akbar wrote that Ackerman was seeking help with depression and mood disorder. *Id.* He reported Ackerman was upset about gaining some weight and was also struggling with the decision to quit using drugs.

*Id.* Ackerman described himself as anxious, depressed, unable to sleep and having racing thoughts. *Id.* Dr. Akbar also described Ackerman's past work and medical history, including mixed reports that indicated some improvement with medications while other medications did not work as expected. *Id.*

Dr. Akbar described Ackerman as an "alert cooperative male who was oriented to time, place and person with intact memory and of normal intelligence." AR 583. He showed pressured speech, flight of ideas and anxiety but seemed "talkative, well aware of various options and is motivated to get help and be rehabilitated." *Id.* Dr. Akbar diagnosed him with bipolar disorder, anxiety disorder, methamphetamine dependence that was in remission and complications from stomach surgery. *Id.*

Dr. Akbar also completed mental health interrogatories on July 18, 2012. AR 642-47. He noted depression, emotional liability, substance dependence, social isolation, decreased energy, hostility and irritability, psychomotor agitation or retardation, feelings of guilt and worthlessness, difficulty thinking or concentrating, suicidal ideation or attempts, generalized persistent anxiety and sleep and mood disturbances. AR 642. He described Ackerman's prognosis as "guarded, poorly controlled depression" despite medication and stated that Ackerman's mood disorder was "independent of substance abuse." AR 643, 647. He reported a Global Assessment Functioning (GAF) score of 50, which indicates serious symptoms or impairment.[1] AR 25.

---

[1] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school or occupational settings, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM–IV). A GAF score of 41 to 50 indicates the individual has serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or a serious impairment in social, occupational or school functioning (*e.g.*, no friends, unable to keep a job). *Id.*

### b.    Mr. Dickinson

Mr. Dickinson saw Ackerman on a regular basis.  On December 20, 2010, he provided a written opinion in the form of a letter to the Disability Review Board.  AR 497.  He wrote: "Although therapy and medication has shown some promise, [Ackerman] sometimes requires 14 hours of sleep a day . . . yells using extremely profane language for small offenses . . . becomes tearful easily and frequently struggles with daily tasks." *Id*.  He further stated that because of the symptoms of bipolar disorder, Ackerman could not maintain employment.  *Id*.

### 3.    The ALJ's Explanation

The ALJ began his assessment of Ackerman's substance-abuse-free RFC with a summary of the medical evidence.  AR 20-24.  He then addressed the opinion evidence, giving little weight to both Dr. Akbar and Mr. Dickinson's opinions.  AR 25-26.  With regard to Dr. Akbar, the ALJ determined he was not a treating physician because there was only one documented visit in the record.  AR 25.  Because Dr. Akbar was not considered a treating physician and his opinions were inconsistent with the objective medical evidence, the ALJ decided his opinion was not entitled to substantial weight.  *Id*.

With regard to Mr. Dickinson, the ALJ noted that he was not an acceptable medical source, meaning he could not establish the existence of impairments but could shed light on how those impairments affected Ackerman's ability to work.  AR 25.  The ALJ found that his opinions were inconsistent with his treatment notes and other medical evidence of record. AR 25-26.  The ALJ afforded his opinion little weight.  AR 26.

### 4.    Analysis
### a.    Dr. Akbar's Opinion

Ackerman contends the ALJ erroneously found that Dr. Akbar was not a treating physician and, as a result, failed to give his opinion proper weight.  Doc. No. 10 at 15. The Commissioner argues that the record reflects only one meeting between Dr. Akbar

and Ackerman, meaning Dr. Akbar is not a treating physician and, therefore, his opinion is not controlling. Doc. No. 11 at 9, 12.

As noted above, treating sources are medical sources who provide the claimant with treatment and evaluation and have an ongoing relationship with the claimant. 20 C.F.R. §§ 404.1502, 416.902. An ongoing relationship exists when the evidence shows the claimant has seen the medical source with a frequency "consistent with the accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical conditions." *Id.* A treating relationship may be established by evidence that the medical source has treated or evaluated the claimant "only a few times" if that level of interaction is typical for the claimant's conditions. *Id.*

Here, I find that the ALJ's decision to afford little weight to Dr. Akbar's opinion is supported by substantial evidence on the record as a whole and that the ALJ gave good reasons for his decision. While Ackerman cites portions of the record suggesting Dr. Akbar is his treating physician, those portions are not persuasive. For example, a report from the Peoples Community Health Clinic notes that Ackerman was "seeing Dr. Akbar for his bipolar meds" but the report was written by a different physician. AR 603. In his disability report, Ackerman indicates he saw Dr. Akbar on a regular basis, but the record contains no documentation of those regular meetings. AR 189. Paul Conditt, Psy.D., reported in a psychological evaluation that Dr. Akbar is Ackerman's prescribing doctor, but there is no indication of how often Ackerman visited him. AR 503. During the ALJ's hearing, Ackerman testified that he saw a psychiatrist every three months but did not identify the psychiatrist. AR 59.

Similarly, Ackerman's attorney argued that Dr. Akbar is a treating physician but was unable to produce records from Dr. Akbar concerning Ackerman's treatment. AR 42. The ALJ identified Dr. Akbar as Ackerman's "treating psychiatrist" in the summary of his findings, but then pointed out there is only one documented instance of a meeting between Ackerman and Dr. Akbar. AR 24, 582. In his own treatment notes, Dr. Akbar

14

mentioned Ackerman would visit again in six weeks, but there is no other record of that meeting or any subsequent meetings.  AR 582.

The ALJ has a duty to develop the record, but does not have the duty to seek additional statements from a physician unless a crucial issue is underdeveloped.  *Stormo*, 377 F.3d at 806.  Here, the ALJ kept the record open for two weeks after the hearing to allow Ackerman's attorney to submit additional evidence, but no records were submitted to document additional visits between Ackerman and Dr. Akbar.[2]  AR 43.  Without additional evidence, the ALJ could rely only on what exists in the record.  Here, the crucial issue of the severity of Ackerman's impairment is not underdeveloped because there are records of other examining physicians and therapists that provide detailed data and observations.  The lack of evidence from Dr. Akbar supports the ALJ's decision not to classify Dr. Akbar as a treating physician.

Because the record supports the ALJ's conclusion that Dr. Akbar was not a treating physician, the ALJ had more discretion to consider any inconsistencies in the record while evaluating his opinion.  *Raney*, 396 F.3d at 1010.  Ackerman claims the ALJ relied primarily on inconsistent GAF scores to discount Dr. Akbar's opinion.  Doc. No. 10 at 17.  However, the ALJ also addressed various inconsistencies between Dr. Akbar's interrogatory answers, his earlier treatment notes and other medical evidence.  AR 25.

Dr. Akbar's interrogatory answers stated that Ackerman's depression and anxiety were only "marginally controlled" despite medication.  AR 645.  Dr. Akbar also wrote that Ackerman had slight difficulty with daily tasks, marked difficulty in following detailed instructions and dealing with others and frequent deficiencies in concentration.  *Id.*  However, Dr. Akbar's treatment notes indicate Ackerman's mood and anxiety improved with medication, though it did not help as much with manic behavior.  AR 582.

---

[2] Even when submitting additional evidence to the Appeals Council, Ackerman submitted no records establishing an ongoing treatment relationship with Dr. Akbar.  AR 5.  Ackerman had ample opportunity to submit evidence supporting his claim that Dr. Akbar is a treating physician but failed to do so.

Mr. Dickinson's treatment notes show Ackerman had problems with depression and controlling his mood, but also indicate that those problems improved with treatment, familial support and medication. AR 543-81. For example, in April 2011, Mr. Dickenson stated that Ackerman seemed to be gaining perspective and by the end of the session, he was more pleasant. AR 571. In July 2011, Ackerman reported that he hoped to obtain employment detasselling corn to earn money. AR 563. At that time, Mr. Dickenson noted that with medication, Ackerman appeared less prone to extreme mood swings and that he seemed to "benefit from processing symptoms and plans in a therapeutic environment." *Id.*

In August 2011, Ackerman took the Beck's Depression Inventory, which showed only moderate levels of depression. AR 559. In September 2011, Ackerman reported to Mr. Dickenson that he was able to manage his sad moods. AR 557. In October 2011, Ackerman reported that because he took care of his parents, they did not have to go to a nursing home and this made him feel useful and improved his mood. AR 555. In November 2011, Ackerman told Mr. Dickenson that he was not as hopeless as in the past. AR 551.

In January 2012, Ackerman again reported caring for his aging parents. AR 547. He was depressed but felt hopeful about the future. *Id.* Mr. Dickenson noted that Ackerman's amphetamine dependence was asymptomatic and in full remission at 16 months. AR 549. In February 2012, Mr. Dickenson recorded that Ackerman benefited from being able to process and reframe his experiences. AR 545. In April 2012, Mr. Dickenson wrote that Ackerman was taking his medication as prescribed. AR 543.

Dr. Akbar's opinion also conflicts, to some extent, with Dr. Conditt's. For example, Dr. Conditt reported that Ackerman had no difficulty completing daily tasks or understanding and carrying out instructions. AR 504. Dr. Conditt also wrote that if Ackerman continued to stay sober, his good judgment would remain intact. *Id.*

To conclude, the record does not support Ackerman's contention that Dr. Akbar was a treating source. Having carefully reviewed the record, I find that the ALJ provided

good reasons, supported by substantial evidence on the record as a whole, for the weight he afforded to Dr. Akbar's opinion.

### b.    *Mr. Dickinson's Opinion*

Ackerman argues the ALJ failed to properly consider Mr. Dickinson as part of Ackerman's "treatment team" and thus did not give his opinion proper weight. Doc. No. 10 at 22. In *Shontos*, the Eighth Circuit Court of Appeals held that the opinions of mental health providers normally classified as "other sources" should be weighed as medical source opinions if the providers treated the plaintiff using a team approach. 328 F.3d at 426. In that case, two therapists treated the plaintiff 49 times over 15 months and a nurse practitioner evaluated her intermittently for the purpose of prescribing medication. *Id.* One of the therapists was an acceptable medical source (a clinical psychologist). *Id.* at 421, 426. The claimant also saw a social worker at the same treatment center twice a week. *Id.* at 426. Because the opinions of the non-acceptable medical sources were consistent with that of the acceptable source, the court held that the ALJ erred by discounting those opinions. *Id.*

Ackerman argues that Mr. Dickinson's opinion was likewise entitled to greater weight because he and Dr. Akbar were part of a treatment team. Mr. Dickinson met Ackerman 20 times between November 2010 and April 2012. AR 543-81. However, as discussed above, there was only one documented meeting between Ackerman and Dr. Akbar during that same time period. AR 582. There is no mention of Dr. Akbar in Mr. Dickinson's notes, only comments that Ackerman would continue to take his medication as prescribed or lists of new medications. AR 543-81. Mr. Dickinson appeared to be the primary, if not only, person treating Ackerman at that particular facility. On this record, the ALJ was not compelled to find that Mr. Dickinson's opinion was entitled to greater weight under a "treatment team" theory.

Absent the treatment team relationship, Mr. Dickinson is not an acceptable medical source. 20 C.F.R. §§ 404.1513, 416.913. Reports concerning the existence of

impairments must come from acceptable medical sources, but opinion evidence about the severity of the impairments and how they affect the claimant's ability to function may come from other sources. 20 C.F.R. §§ 404.1513, 416.913. Therapists are considered other sources. *Id.* "In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005). The ALJ afforded little weight to Mr. Dickinson's opinion because he was not an acceptable medical source and his opinion was inconsistent with his treatment notes and other medical evidence of record. AR 25-26.

The inconsistency here is not with the existence of impairments but rather with their severity. Both Mr. Dickinson's letter and his treatment notes point out that Ackerman improved with therapy and medication but also recognized continued difficulties. AR 497, 543-81. Mr. Dickinson's treatment notes indicate times when Ackerman became tearful and either appeared or reported being irritable. AR 543-81.

However, the treatment notes indicate a more marked improvement than the letter implies. Those notes reveal that Ackerman took care of his aging parents, something Mr. Dickinson's letter neglected to point out. AR 549, 551, 555, 557. The letter states that Ackerman "at times yells extremely profane language for small offenses by those around him." AR 497. However, this trait is not described in Mr. Dickinson's treatment notes.

Moreover, while the letter states that Ackerman "frequently struggles with daily tasks," *id.*, other evidence suggests otherwise. As noted above, Dr. Conditt reported that Ackerman had no difficulty understanding instructions or procedures, could carry out those instructions, could interact appropriately with others and had good judgment when not using drugs. AR 504. He further found that Ackerman could do chores and cook meals. AR 503. A non-examining state agency psychological consultant also concluded that Ackerman could complete simple, repetitive tasks. AR 503, 507.

The ALJ properly treated Mr. Dickinson's opinion as "other medical evidence." The ALJ then gave good reasons, supported by substantial evidence on the record as a whole, for the weight he afforded to that opinion.

## B.      Additional Evidence Submitted to the Appeals Council

Ackerman submitted two additional evaluations from Dr. Conditt to the Appeals Council in support of his request for review.  AR 1-2, 5.  One was a mental RFC assessment dated November 8, 2009.  AR 648-49.  The other was a report dated October 15, 2012, based on an evaluation that occurred on the same day.  AR 37-39.  The Appeals Council accepted and considered the 2009 evaluation but found that it did not provide a basis for changing the ALJ's decision.  AR 1-2, 5.  The Appeals Council rejected the 2012 evaluation, finding that it did not address the relevant period of time.  AR 2. Specifically, the Appeals Council noted that the time period relevant to Ackerman's application ended September 10, 2012 (the date of the ALJ's decision).  *Id.*  The Appeals Council advised Ackerman that he would have to file a new application if he contends that he was disabled after September 10, 2012.

Ackerman argues that the Appeals Council erred by rejecting the 2012 report, even though it was written after the relevant time period.  He contends that "the report pertains more generally to the period of time since Ackerman gave up illicit substances," which would include a portion of the relevant period.  Doc. No. 10 at 21.  Ackerman also contends that the Appeals Council erred in failing to find that the 2009 report required remand.

The Commissioner disagrees.  She contends that a decision by the Appeals Council to deny review is not open to judicial review.  She also argues that the 2012 report was correctly rejected because it did not address the relevant time period and that the 2009 report does not require remand.

I find that the Appeals Council properly refused to consider the 2012 report.  The Commissioner's regulations provide that the Appeals Council may consider additional

evidence "only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b). Dr. Conditt's 2012 report did not address Ackerman's condition on or before September 10, 2012, the date of the ALJ's decision. Instead, it was based on an evaluation that took place October 15, 2012. AR 37. The report addressed Ackerman's functioning on that date and provided a prediction of his future functioning. AR 37-39. While Ackerman argues that the report purported to be retrospective in nature, thus covering some period of time before the ALJ's decision, he cites no statements in the report to support this argument. Based on my independent review of the 2012 report, I find that the Appeals Council properly rejected it.[3]

As for the 2009 report, the Appeals Council expressly considered it and made it part of the record. AR 1-2, 5. As the Eighth Circuit has explained:

> Once it is clear that the Appeals Council has considered newly submitted evidence, we do not evaluate the Appeals Council's decision to deny review. Instead, our role is limited to deciding whether the administrative law judge's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made.

*Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994). This requires that the court "speculate to some extent on how the administrative law judge would have weighed the newly submitted [evidence] if [it] had been available for the original hearing." *Id.*

Based on my review of the entire record, I find nothing about the 2009 report to suggest that it would have had any impact on the ALJ's findings. The report is a checkbox form dated November 8, 2009, on which Dr. Conditt reported Ackerman's mental ability to perform various workplace tasks. AR 648-49. There are no corresponding records

---

[3] In addition, I agree with the Commissioner's argument that remand would not be necessary even if the 2012 report is considered. *See* Doc. No. 11 at 18-21. Among other things, the opinions Dr. Conditt expressed in the 2012 report appear to be based largely on Ackerman's subjective allegations and those opinions are inconsistent, in several respects, to those Dr. Conditt expressed in his February 2011 report.

or treatment notes indicating that Dr. Conditt saw Ackerman on November 8, 2009. Nor does the report reference any medical evidence or otherwise purport to explain its findings. The Eighth Circuit has noted that "[a] conclusory checkbox form has little evidentiary value when it cites no medical evidence, and provides little to no elaboration." *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (internal quotations omitted).

In addition, it is undisputed that Ackerman was using illegal drugs in 2009.[4] Congress has determined that a claimant shall not be considered to be disabled under the Act "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The "key factor" in determining whether drug addiction or alcoholism (DAA) is a contributing factor material to a determination of disability is whether the claimant would still be found disabled if he or she stopped using drugs or alcohol. *See, e.g.,* 20 C.F.R. § 404.1535(b)(1).

Dr. Conditt's 2009 report, prepared at a time Ackerman was suffering from DAA, does not indicate whether Dr. Conditt was assessing Ackerman's mental RFC with or without the impact of DAA. Thus, that report would have had little or no relevance to the ALJ's determination of Ackerman's RFC, even if it had been available at the time of the hearing. For all of these reasons, I conclude that the addition of Dr. Conditt's 2009 report to the record does not require remand.

## C. *Does Substantial Evidence Support the ALJ's Decision?*

### 1. *The RFC Determination*

Ackerman claims that because the ALJ "rejected the opinions of Dr. Akbar, Dr. Conditt, and therapist Dickinson," his RFC assessment is not supported by substantial

---

[4] Ackerman testified that he used methamphetamine until August 2010. AR 46, 60, 61. Ackerman's attorney then acknowledged that the actual, alleged onset date should be August 2010, because that was when Ackerman "was free of alcohol and stuff, illegal stuff." AR 67. In his brief, Ackerman states that he had been "addicted to crystal meth." Doc. No. 10 at 7.

medical evidence. Doc. No. 10 at. 24. Even after giving little weight to some medical opinions, the ALJ may determine a claimant's RFC without obtaining additional medical evidence "so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 2014) (quoting *Naber*, 22 F.3d at 189). A claimant's RFC is based on "all of the relevant medical and other evidence" including medical records, physicians' and others' observations and even the claimant's own testimony. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007).

Here, even if the ALJ would have completely discounted the above-mentioned medical opinions, other evidence of record supports his assessment of Ackerman's RFC. The ALJ provided a lengthy overview of that evidence, including Ackerman's own descriptions of his physical and mental impairments. AR 21-29. The ALJ cited to several reports supporting a finding that while Ackerman may have been disabled when abusing substances, he had the ability to perform low stress work when he abstained. AR 22-23.

The ALJ noted that in August 2010, while Ackerman was in inpatient treatment, a psychologist reported that his attention span and concentration were fair while his speech, language and thought processes were normal. AR 22, 448-50. The psychologist also reported that Ackerman's insight and judgment were fair and his recent and remote memory were intact. AR 450. The ALJ also considered that another psychologist, John Bayless, Ph.D., found that Ackerman had fluent conversational speech and scored in the average range in verbal abstract reasoning. AR 23, 440. Dr. Bayless' testing showed some deficits, but he anticipated that Ackerman's abilities would improve with abstinence from drugs and better control of his bipolar symptoms. AR 23, 440-41.

Upon discharge from inpatient treatment, Kevin Orcutt, M.D., found that Ackerman's conversation was appropriate, with no racing thoughts. AR 419. The ALJ pointed out that in November 2010, Dr. Akbar described Ackerman as alert and oriented, with intact memory and normal intelligence. AR 24, 582-83. The ALJ also considered the fact that in February 2011, after Ackerman had been sober for six months, Dr. Conditt

found that Ackerman had no impairment in his ability to understand instructions, procedures and locations and maintain concentration and pace. AR 26, 501-04. Dr. Conditt also noted that Ackerman had very high functioning in his ability to interact appropriately with supervisors, coworkers and the public. AR 504. Dr. Conditt wrote that while Ackerman had a history of poor judgment when using drugs, if he could stay sober he would have no impairment in judgment and the ability to respond appropriately to changes. *Id.*

Contrary to Ackerman's argument, the ALJ did not "reject" Dr. Conditt's 2011 report. The ALJ did just the opposite, finding that it was entitled to "considerable weight." AR 26. That report, along with the other evidence described above, supports a finding that Ackerman's drug abuse was a "substantial barrier to [his] normal functioning." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). As the Eighth Circuit Court of Appeals has noted: "Determining whether a claimant would still be disabled if he or she stopped drinking is, of course, simpler if the claimant actually has stopped." *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000). To his credit, Ackerman stopped using drugs in August 2010. The record shows that this change caused Ackerman's condition to improve significantly. The ALJ's RFC findings are supported by substantial evidence on the record as a whole.

### 2.    *The Step Five Determination*

Having determined Ackerman's RFC, the ALJ found that he had no past relevant work. AR 29. This required the ALJ to move to Step Five and consider whether there is other work Ackerman is able to do in light of his RFC, age, education and work experience. 20 C.F.R. §§ 404.1512(f), 404.1520(a)(4)(v), 416.912(f), 416.920(a)(4)(v). The Commissioner was required to show not only that Ackerman's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger,* 390 F.3d at 591. Based on the VE's

testimony, the ALJ found that there are numerous unskilled positions that Ackerman is able to perform.  AR 30.

Relying on *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000), Ackerman contends that the ALJ's finding is not supported by substantial evidence.  In *Nevland,* an ALJ made a Step Five determination that a claimant who could not perform past relevant work could, nonetheless, perform certain jobs identified by a VE.  204 F.3d at 857.  Various non-treating and non-examining physicians had provided opinions about the claimant's RFC, which the ALJ then used in formulating hypothetical questions to a VE.  *Id.* at 858.  The Eighth Circuit Court of Appeals began its analysis as follows:

> In our circuit it is well settled law that once a claimant demonstrates that he or she is unable to do past relevant work, the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do. *McCoy v. Schweiker*, 683 F.2d 1138, 1146–47 (8th Cir. 1982)(en banc); *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir. 1983).  It is also well settled law that it is the duty of the ALJ to fully and fairly develop the record, even when, as in this case, the claimant is represented by counsel. *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983).

*Id.* at 857.  The court noted that while the record contained many treatment notes, none of the treating physicians provided opinions concerning the claimant's RFC.  *Id.* at 858.  The court then stated:

> In the case at bar, there is no *medical* evidence about how Nevland's impairments affect his ability to function now.  The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of Nevland's RFC.  In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record.  The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole. *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir. 1999).  Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits.  *Id.*  In our opinion, the ALJ should have sought such an opinion

from Nevland's treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess Nevland's mental and physical residual functional capacity. As this Court said in *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975): "An administrative law judge may not draw upon his own inferences from medical reports. *See Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974); *Willem v. Richardson*, 490 F.2d 1247, 1248–49 n. 3 (8th Cir. 1974)."

*Id.* [emphasis in original].

Ackerman contends *Nevland* is on point, arguing that no non-treating or non-examining physician provided an opinion as to his work-related limitations. That argument is based on Ackerman's erroneous contention that the ALJ rejected Dr. Conditt's 2011 opinion. As noted above, the ALJ gave "considerable weight" to that opinion. AR 26. Dr. Conditt's 2011 opinion was based on an evaluation of Ackerman that occurred on February 14, 2011, and contains findings as to Ackerman's work-related limitations. AR 501-04. *Nevland* simply does not apply. Substantial evidence on the record as a whole supports the ALJ's determination that Ackerman can perform other work.

## VI. CONCLUSION

After a thorough review of the entire record and in accordance with the standard of review I must follow, I RESPECTFULLY RECOMMEND that the Commissioner's determination that Ackerman was not disabled be **affirmed** and that judgment be entered against Ackerman and in favor of the Commissioner.

Objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object waives the right to de novo review by the district court of any portion of the Report and

Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 16th day of June, 2015.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE